EDWARD M. HACKLEY v. JOHN GERAGHTY ET AL.

The act of March 31st, 1869, authorizing the appointment of harbor masters and inspectors, with power to demand and receive from the commanders or owners of vessels of the United States or of foreign nations that are permitted to enter the waters of the bay of New York, or in the North River, within the limits of Jersey City and Hoboken, and load or unload or make fast to any wharf therein, one-half of one per cent. per ton; and also on foreign ships entering said ports, and loading or unloading at any wharf therein, double the amount of fees above specified; *held,* to be repugnant to the constitution of the United States, and therefore void.

On *certiorari* to remove the judgment of a justice of the peace, rendered in favor of the plaintiff for $1,265, the amount of fees claimed. It was insisted on part of the defendant below that the act under which the recovery was had was unconstitutional and void, because—

1. It was a regulation of commerce.

2. It authorizes an impost or duty on imports and exports; and—

3. It lays a duty on commerce.

The case was argued in the presence of BEDLE and DALRIMPLE, Justices.

For plaintiff in *certiorari*, *I. W. Scudder.*

For defendants, *S. B. Ransom* and *J. Dixon, Jr.*

DALRIMPLE, J.   By an act of the legislature of this state entitled " An act to appoint harbor masters and inspectors," approved March 31st, 1869, (*Laws of* 1869, *p.* 1038,*) the governor is authorized to appoint, by and with the consent of the senate, two harbor masters, who, among other powers conferred on them, are given authority to regulate and station all ships and vessels in the bay of New York, or in the North river, within the limits of Jersey City and Hoboken, and to remove, from time to time, such ships and vessels as are not employed in receiving and discharging their cargoes, to make room for such as require to be more immediately accommodated, and to determine how far and in what instances it is the duty of masters and others, having charge of ships and vessels to accommodate each other in their respective situations, and to enforce the execution of all laws of this state for clearing the wharves and docks, and for preventing and removing all nuisances in or upon them, or either of them.   The act provides for compensation of these officers in the following words:  " And the said harbor masters shall have power to demand and receive from the commanders, owners,. and consignees, or either of them, on all ships or vessels of the United States, and on all ships or vessels of any foreign nation that are permitted by the laws of the United States to enter on the same terms as vessels of the United States, and which shall enter the bay of New York or in the North river, within the limits of Jersey City or Hoboken, aforesaid, and load or unload, or make fast to any wharf therein, one half of one per cent. per ton, to be computed from the tonnage expressed in the registers or enrollments of such ships and vessels, respectively, and no more ; and, also, on all foreign ships and vessels which shall arrive at and enter the said port and load, unload, or make

* *Rev., p.* 732.

fast to any wharf therein, double the amount of fees above specified according to the rate of tonnage or burthen of said ships or vessels, respectively, to be ascertained by their respective registers or other documents, on board the same."

The plaintiffs in this case are the harbor masters appointed in pursuance of the act above mentioned, and the defendant is commander of the steamship China, a vessel of Great Britain engaged in carrying freight and passengers between Liverpool, England, and the port of New York. On the 23d of June, 1869, the China arrived at and made fast to the wharf of her owners in Jersey City, and there unloaded. The plaintiffs thereupon duly demanded of the defendant payment of the sum of $12.64, the amount for which the vessel was liable to be taxed or assessed, provided the act now under consideration shall be held valid. The plaintiffs' demand was not complied with, and thereupon they brought an action before a justice of the peace, and recovered the amount of fees to which they claimed to be entitled. This *certiorari* brings up the judgment of the justice, and the reason urged for reversal is, that the act is repugnant to the constitution of the United States, in that it is—*first*, a regulation of commerce; *second*, authorizes an impost or duty on imports and exports; and, *third*, lays a duty on tonnage.

In my opinion the question is *res adjudicata*. In the case of *Steamship Company* v. *Port Wardens*, reported in 6 *Wallace* 31, the validity of an act of the state of Louisiana, in substance the same as ours, was under consideration by the Supreme Court of the United States, and held to be unconstitutional, because a regulation of commerce and a duty on tonnage. In that case, as in the one before us, the law was *sought* to be upheld on the ground that it was a mere police regulation, standing on the same foundation as inspection, health, quarantine, and pilot laws; but the learned Chief Justice who delivered the opinion of the court says the act " imposes a tax upon every ship entering the port of New Orleans, to be collected upon every entry. In the case of a steamer plying between that port and ports in adjoining states of Alabama or Texas, it becomes a serious burden and works the very

mischief against which the constitution intended to protect commerce among the states." And after showing that the act in question could not stand upon the same constitutional grounds as state laws authorizing the collection of pilotage, he concludes thus: "We think it quite clear, therefore, that the regulation of commerce made by the act before us comes within none of the limitations or exceptions to the general rule of the constitution, that the regulation of commerce among the states is in congress." It may be said that our act is unlike the Louisiana act, in that the latter expressly provides that the port wardens shall be entitled to demand and receive their fees, whether called on to perform any service or not, for every vessel arriving in the port of New Orleans, and ours contains no such provision. The effect of our act is, however, the same as if the words of the Louisiana act had been contained therein. The commanders, owners, and consignees of all ships and vessels which come within the limits of Jersey City or Hoboken, and load or unload or make fast to any wharf therein, are made liable to the payment of the prescribed fees. And it is further provided, that no compensation shall be demanded by the said harbor masters for the entrance into the said limits of Jersey City or Hoboken, of any ship or schooner employed in the coasting trade within the United States, unless upon application of the master or persons having charge of such vessel, the said harbor masters shall interfere and adjust any difference which may happen respecting the situation or position of any such vessel, in which case the said harbor masters may demand from the party in default in the premises the sum of $2, excepting canal barges and canal boats, for which they may receive $1 each, for any difference so adjusted. It will thus be perceived that the liability of vessels engaged in foreign trade to the tax or assessment provided by the act, does not depend upon the fact that the services of the harbor masters are required. By the express terms of the act, the master, owner, and consignees of any ship or vessel subject to the payment of fees to harbor masters as aforesaid, shall,

Hackley v. Geraghty et al.

within forty-eight hours after the arrival of such ship or vessel, pay the fees so due thereon, at the office of the said harbor masters, and in default of such payment, if the same shall have been first duly demanded, such master, owner, or consignee on whom such demand shall have been previously made, shall forfeit and pay double the amount of such fees, to be sued for and recovered in the names, and for the use of the said harbor masters, in any court having cognizance thereof. The fees are payable within forty-eight hours after the vessel comes within the city limits, and loads or unloads or is made fast to any wharf therein, whether such wharf be public or private, or the property of the persons from whom the fees are collectible or another.

Besides, the act is clearly obnoxious, both in principle and authority, to the objection that it authorizes a duty on tonnage. In express terms, the fees of the harbor masters are to be ascertained upon the basis of a certain per centum per ton, to be computed from the tonnage expressed in the register or enrollment of the vessel. In short, the ship owner is made liable to the payment of a duty of half a cent per ton upon the entire tonnage of his ship. This comes with the express prohibition of *Art. I.*, § 8, *of the Constitution of the United States*, whereby it is ordained that " no state shall, without the consent of congress, lay any duty of tonnage."

It is held in the case above referred to, that a fixed sum required to be paid by each vessel without regard to its tonnage, is within this prohibition of the constitution. The mode of levying the tax adopted by our act, is a duty on tonnage within the more strict definition of that term, which is a tax graduated according to the capacity of the ship or vessel. *Bouvier's Law Dict.*, vol. 2, *p.* 570 ; *Jacob's Law Dict.*, vol. 6, *p.* 319.

For these reasons we are constrained, after careful consideration of the questions involved, to pronounce the act in question, in contravention of the constitution of the United States. It is not, therefore, necessary further to consider whether it is not also repugnant to that provision of the

constitution which ordains that no state shall, without the consent of congress, lay any imposts or duties on imports or exports, except such as may be absolutely necessary for executing its inspection laws. To reach this result we have not trodden upon any doubtful or uncertain ground. The plain provisions of the fundamental law as expounded by the court of last resort, leave us no other alternative.

It may be well to observe, in conclusion, that this opinion only extends to that part of the act now under consideration. Whether the harbor masters may not be entitled to recover the prescribed fees for services actually rendered or offices performed for or in respect to any ship or vessel which may need or require such official services, is another and different question, on which no opinion is intimated.

The judgment below must be reversed.

BEDLE, Justice, concurred.

AFFIRMED, 7 *Vr.* 459.